## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| REGINA BROWN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | |
| | § | |
| CHAD F. WOLF, Acting Secretary, | § | |
| Department of Homeland Security. | § | JURY DEMANDED |
| Defendant | § | |
| | § | |

## COMPLAINT

### TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff REGINA BROWN, in the above numbered and entitled case, complains of CHAD F. WOLF, ACTING SECRETARY, DEPARTMENT OF HOMELAND SECURITY (DHS). (Hereafter, "Defendant and/or Agency"), Defendant in the above numbered and entitled case, and for cause(s) of action would respectfully show unto the Court and jury as follows:

### I. PARTIES

1.      Plaintiff, REGINA BROWN an Black/African American Female, is a citizen of the United States, was employed as a Management and Program Analyst (Program Manager), GS-14 Department of Homeland Security-United States Immigration and Customs Enforcement at the Agency's facility in Washington D.C. during the time period wherein the present of cause of action accrued. REGINA BROWN has been employed by the DEPARTMENT OF HOMELAND SECURITY AND ITS LEGACY AGENCIES from June 2008 to present.

REGINA BROWN is a federal employee within the meaning of Section701(f) and Section 717(a) of Title VII, 42 U.S.C. Sec. 2000e(f) and 16(a) and at all relevant times was a

federal employee. REGINA BROWN (Hereafter "REGINA") is a resident of the city of Springfield, Virginia.

2.      Defendant CHAD F. WOLF is the ACTING SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, which is an agency of the United States government. Defendant does business at the United States Department of Homeland Security, 3801 Nebraska Ave, NW, Washington, DC 20016. Defendant CHAD F. WOLF is sued in his official capacity as ACTING SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, and as such, is amenable to suit as provided in Section701(f) and Section 717(a) of Title VII, 42 U.S.C. Sec. 2000e(f) and 16(a) and may be served by serving Secretary, CHAD F. WOLF.

## II. JURISDICTION

3.      This action arises under Title VII of the Civil Rights Act of 1964, Section 701 et. seq., as amended, 42 U.S.C.A. 2000e, et. seq., 29 C.F.R. 1614 *et.seq*., The Equal Pay Act of 1963 and 28 U.S.C. Section 1346.

4.      All of the necessary administrative prerequisites have been met prior to filing the instant action, as Plaintiff has filed timely complaints of discrimination and retaliation with her federal employer, the Department of Homeland Security, and brings her claims more than 180 days after she filed her complaints.

5.      The District of Columbia is where the actions complained of in the present case took place and where the employment records relevant to the unlawful practices are kept.

6.      The jurisdiction of the Court is invoked pursuant to 28 US.C. § 1343(a)(4), 42 U.S.C. § 2000E-5 (2012) and The Equal Pay Act of 1963.

2

### III. VENUE

7.     Venue is appropriate in this District pursuant to 28 U.S.C. §1391, 42 U.S.C. 2000e-5(f)(3) and The Equal Pay Act of 1963, because the Defendant resides in this judicial district, and a substantial part of the events giving rise to this action took place within this judicial district.

### IV. FACTS

8.     Regina Brown (African American female) was a Management and Program Analyst (Program Manager), GS-14 Department of Homeland Security-United States Immigration and Customs Enforcement during the time period that is the subject matter of the present litigation.

9.     On or about November 2015, Regina was transferred from the National Security Integration Center to Counter Proliferations Investigative (CPI-BEAP) program after a disagreement with her Acting Section Chief, Victor Curly (Black/Hispanic male) about the language in her PWP (Performance Work Plan) and annual performance rating.   An 1811 series male employee, who was working in a provisional position at Headquarters, was placed into the Acting Section Chief position previously held by Regina at Headquarters. However, if one looked at Regina's experience and qualifications, she should have been promoted to Section Chief at this time instead of being transferred.

10.     On or about March 2017, Regina was transferred again from CPI (Counter Proliferation Investigations) to the Information Management Division. This decision was made by the all-White male management chain above her.

11.     Regina's Program Manager position is a 300 series position responsible for all aspects of program management and program building.   In contrast, 1811's are criminal investigators assigned to case work and investigating criminal activity for Homeland Security Investigation (HSI) and are primarily non-minority, white males. Each member of the CPI unit who were classified as 1811s are White males who benefited from the 1811 career ladder rotational program or the 1811 TDY program.     There have been several promotions within the group, however, Regina was not promoted or placed into opportunities which would allow her to be promoted in the future.

The discriminatory practice by Headquarters of the Defendant of promoting or providing temporary duty assignments to 1811s into lead program manager and supervisory roles in lieu of more qualified 300 series employees is a systemic problem within the Agency. These supervisory positions are written up for 1811s and because of this the (300 series) Program Managers are not eligible to apply. Indeed, there is a career ladder for 1811's but none for 300 series employees. The policy and practice of the criminal investigator career ladder, headquarters tour and temporary duty assignments via HSI Headquarters into lead program manager positions and supervisory roles in lieu of categorically more qualified 300 series, creates an environment when minorities are restricted to support roles and denied opportunities for lead program manager positions and promotions. As a result, these policies and practices have a disparate impact that is discriminatory in effect upon minorities and female employees, even if the policies and practices were deemed lawful or neutral in intent with regard to sex and race (neither of which is true as discussed herein).

12.     In addition, the 1811's who come into Headquarters are paid 25% (LEAP) and even more if on a TDY assignment to conduct duties classified as program management vs. law

enforcement. This misuse of job classification and series is discriminatory (pay equality) as 1811s are primarily non-minority, males and non-1811s are primarily minority females.

13.     Prior to February 8, 2018, Regina had been the lead Program Manager for the Border Enforcement Analytics Program (BEAP) for about one year. As a Program Manager she had responsibility for handling all aspects of the program, including the business model, budget, contracts etc.   However, on or about March 20, 2018, Regina's (a permanent GS-14) was required to transfer all of her BEAP responsibilities to Special Agent Benjamin Teed (1811-GS-13, white male) and Special Agent Evan Campanella (1811-GS-13, white male, in a temporary GS-14 status on a temporary duty (TDY) assignment) and forcibly reassigned to the FALCON program.

14.     On or about August 16, 2018, Unit Chief Marcus Medina held a mandatory "all-hands" meeting for part of the Division. During this meeting, it was announced by Unit Chief Medina that Special Agent Evan Campanella (white, male) was selected to immediately assume the role as Acting Section Chief over the FALCON and BEAP (now renamed RAVEn) programs. Reassignment to the FALCON program, placed Regina under the first line supervision of SA Eric Cardiel (GS-13 or 14, white male). The selection of SA Campanella as Acting Section Chief, essentially made SA Campanella Regina's acting first line supervisor.

15.     On or about August 22, 2018, Acting Section Chief Matt Grant proposed that Regina transition from the FALCON program to the HSINET/SharePoint program as the Program Manager. This would subsequently remove Regina from SA Campanella's purview and back under the supervision of SC Grant.

16.     On or about September 17, 2018, Regina reluctantly agreed to transition to the HSINET/SharePoint Program which was headed at that time by SA Dave Bearon (White, male).

Regina would now have the same role and responsibilities as SA Bearon but she would receive 25% less in income than SA Bearon. This wage discrimination at HSI ensures that non-1811's, typically minorities and/or female, that work at HSI Headquarters in a capacity similar to their 1811 counterparts, typically white and/or male, will receive unequal and lower wages for doing the same or similar work.

17.     The Defendant's discriminatory and retaliatory actions, including but not limited to the discrepancy in wage and promotional opportunities between males vs. females, summarized in this federal complaint, denied and continue to deny, Regina the opportunity for continued career development. HSI Management requiring Regina to transfer her duties and responsibilities to SA Evan Campanella (GS-13,White, male) and SA Benjamin Teed (GS-13, White, male) and the subsequent transfer to the FALCON program and the succeeding transfer to the HSINET/SharePoint program denied Regina the opportunity for career advancement and the opportunity for consideration for the Acting Section Chief position.   Furthermore, reassignment to the HSINET/SharePoint Program denied Regina, despite Regina's superior qualifications, the opportunity to become the National Program Manager for FALCON in lieu of a preselected 1811 male. On the other hand, her similarly situated colleague, SA Campanella, was advanced and ultimately promoted to an Acting Section Chief position. These actions represent the culture of embedded discrimination used by HSI management to deny non-1811 series, typically more qualified and held by females and/or minorities, the opportunity for career development, advancement and promotion in favor of the 1811 series, typically held by white males.

18.     The promotion of SA Campanella and Regina's reassignment to the FALCON program and subsequently the HSNET/SharePoint program demonstrates the discriminatory and retaliatory conduct by Regina's management and perpetuated a hostile work environment. The

threat of, or the involuntary "choice" to either work under the purview of SA Campanella or transfer to a less prestigious and less desirable position for the second time in less than a year was humiliating and damaging to Regina's professional reputation. Other retaliatory actions include but are not limited to Regina being intentionally excluded from meetings, high level briefings and any significant correspondence related to those programs classified as "law enforcement systems" such as FALCON, RAVEn, ICM, restructuring of the divisions telework policy and "general" disciplinary emails regarding conduct have all been used by management to discriminate and retaliate against Regina.

19.     Regina was more qualified for the promotions received by the white males that are the subject of this Complaint as her qualifications were plainly superior.   At all relevant times, Regina continued to be qualified to fulfill the requirements of these positions, and desired to be promoted to these positions.

20.     On information and belief, Regina asserts that the Defendant acted willfully and with malice and in reckless disregard of Regina's rights and welfare.

21.     Defendant, through its subordinates, retaliated against Regina for engaging in the EEO process in violation of Title VII.

## V.     CAUSES OF ACTION

22.     Regina incorporates the preceding and proceeding paragraphs into this paragraph by reference. The above described facts constitute retaliation and discrimination based on sex, and race in violation of Title VII.   Defendant's reasons for transferring Regina on multiple occasions and not promoting Regina are because of her sex and race, as well as being in retaliation for Regina's opposition to such unlawful conduct.

7

23.     Regina incorporates the preceding and proceeding paragraphs into this paragraph by reference. Regina was subjected to a hostile work environment based on sex, race and retaliation in violation of Title VII.

24.     Regina incorporates the preceding and proceeding paragraphs into this paragraph by reference. Defendant's conduct in transferring and not promoting Regina violates Title VII. Regina is suffering and will continue to suffer irreparable injury as a result of the acts of the Defendant.

25.     Regina incorporates the preceding and proceeding paragraphs into this paragraph by reference. Defendant's unequal compensation for equal work done by Regina compared to her male counterparts violates the EPA. Defendant's actions were a willful violation of the Equal Pay Act.

26.     Regina incorporates the preceding and proceeding paragraphs into this paragraph by reference. Defendants have used policies and practices related to hiring and promotions that have had a disparate impact on the basis of sex and/or race that are neither job-related for the positions at issue nor consistent with business necessity.

## VI.     DAMAGES

27.     Regina's claims of discrimination and retaliation are within the jurisdictional limits of this Court.

28.     Regina incorporates the preceding and proceeding paragraphs into this paragraph by reference. The conduct described above proximately caused actual and compensatory damage to Regina, including but not limited to lost wages, benefits, humiliation and emotional distress, physical pain and suffering, medical services and medications in the past and in the future,

damage to her personal reputation, damage to her professional reputation, damage to her earning capacity, and damage to her enjoyment of life.

29.     Regina is entitled to recover reasonable attorney fees pursuant to EAJA 28 U.S.C. § 2412(b), Title VII and the Equal Pay Act.

## PRAYER FOR RELIEF

30.     WHEREFORE, Regina requests that this Honorable Court advance this case on the docket, order a jury trial at the earliest practical date, and grant Regina the following relief pursuant to all federal law and statutes cited in the preceding and proceeding paragraphs, including, but not limited to the following:

(a)     Grant. Regina permanent injunction enjoining Defendant, it's agents, successors, employees, and those acting in consort with Defendant, from continuing to violate Regina's rights;

(b)     Issue an order requiring Defendant to promote Regina to a higher position to which she is entitled by virtue of her responsibilities and qualifications or award front pay if such promotion is not feasible;

(c)     Issue an order awarding Regina back pay, fringe benefits, and any other appropriate relief necessary to make Regina whole and compensate her for the civil rights violations described above;

(d)     Award Regina compensatory/mental anguish damages;

(e)     Award Regina liquidated damages under the Equal Pay Act.

(f)     Award Regina prejudgment and post-judgment interest as allowed by law;

9

(g)     Award Regina attorney fees and costs of this suit;

(h)     Award Regina such other legal and equitable relief as this Court deems

just and proper;

(i)     Award Regina damages requested in part VI of this Complaint;

(j)     Award Regina all other relief, in law and equity, to which Regina may be

entitled.

Respectfully submitted,

/S/ Dave Scher

_____

Dave Scher
DC Bar# 47664
1300 I Street NW, Ste 400E
Washington, DC
Tel. No. (202) 975-4994
E-mail: dave@hoyerlawgroup.com

/S/ Ashok Bail*

_____

Ashok Bail
Attorney for Plaintiff
3120 Southwest Freeway, Suite 450
Houston, TX 77098
Tel. No. (832) 216-6693
Fax. No. (832) 263-0616
E-mail: ashok@baillawfirm.com
Attorney for Plaintiff
*Pro Hoc Pending